FILED

2025 Mar-28  PM 02:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ESTATE OF MARILLA R. BURPO et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:23-cv-01189-RDP** |
| | } | |
| **SPECIALIZED LOAN SERVICING,** | } | |
| **LLC, et al.,** | } | |
| | } | |
| **Defendants.** | | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on Defendant Federal Home Loan Mortgage Corporation's Motion to Dismiss (Doc. # 50) and Defendant Specialized Loan Servicing, LLC's Motion to Dismiss (Doc. # 52). The Motions (Docs. # 50, 52) have been fully briefed (Docs. # 51, 55, 57; 53, 56, 57[1]; 62, 64) and are now ripe for a decision. For the reasons discussed below, the Motions to Dismiss (Docs. # 50, 52) are due to be granted in part and denied in part.

## I.    Background

This case involves claims related to a mortgage and attempted foreclosure on a home. It is brought under the Fair Debt Collection Practices Act ("FDCPA"), the Truth in Lending Act ("TILA"), and the Real Estate Settlement Procedures Act ("RESPA"), as well as under Alabama state law. (*See* Doc. # 1-1).

---

[1] The Reply (Doc. # 57) was a consolidated reply by SLS and Freddie Mac.

Plaintiffs filed a complaint in Jefferson County Circuit Court. (Doc. # 1-1). The complaint was removed to federal court based on federal question jurisdiction.[2] (Doc. # 1 at 2-3, 6). Plaintiffs have amended their complaint once (Doc. # 16) and have dismissed one of the Defendants (Bank of America N.A.) due to a settlement agreement. (*See* Doc. # 44).

The operative complaint and Plaintiffs' Response to a Show Cause Order (Doc. # 62) allege the following facts: The Estate of Marilla R. Burpo ("the Estate") owns the property of 1004 Parkwood Circle, Birmingham, Alabama 35215 in fee simple. (Doc. # 16 ¶ 6). On or about August 26, 2009, the now deceased owners (William Burpo, Sr., and Marilla R. Burpo) took out a loan and executed a mortgage to Bank of America, N.A. in the amount of $159,600. (*Id.* ¶ 7). Marilla Burpo died without a will on October 5, 2017. (Doc. # 62 ¶ 4). On January 1, 2020, Bank of America, N.A. transferred servicing of the loan to Specialized Loan Servicing LLC ("SLS"), and the Estate was notified of this transfer through a letter sent on January 8, 2020. (Doc. # 16 ¶ 15; *id.* at 60 (Attachment E)). "Each letter and statement sent to the Estate and Harris by SLS represented that SLS is a debt collector." (*Id.* ¶ 30). At some point, Bank of America, N.A. sold the loan to The Federal Home Loan Mortgage Corporation ("Freddie Mac"), with servicing still conducted by SLS.[3] (*Id.* ¶ 15).

Because both owners are now deceased, legal title to the property passed to the Estate at some unspecified date, and Marilla R. Burpo's son Archie Harris ("Harris") is the "heir to the estate, and designated party as a successor in interest to the mortgage . . . [and] is currently residing in said property." (*Id.* ¶¶ 1, 8). Marilla Burpo has three heirs, including Plaintiff Harris, Timothy

---

[2] The removal was also based, in the alternative, on diversity jurisdiction and federal agency jurisdiction. (Doc. # 1 at 3-6).

[3] Plaintiffs also allege without providing further detail that SLS was assigned the Note and Mortgage. (Doc. # 16 ¶¶ 15, 17 & n.3).

Harris, and Christopher Burpo. (Doc. # 62 ¶ 4). Harris filed a petition to open his mother's estate in Jefferson County Probate Court on August 30, 2022. (*Id.*). The estate remains open. (*Id.*). Harris is the "Administrator" of the Estate. (Doc. # 16 ¶¶ 1, 8; *id.* at 52 (Exhibit C)). The Letters of Administration were signed by Probate Judge Sherri C. Friday and stated: "Letter[s] of Administration on the above-named deceased are hereby granted to **ARCHIE HARRIS** who has duly qualified and given bond in the amount $25,000.00 as such Personal Representative and is authorized to administer such estate." (*Id.* at 52 (Exhibit C)).

"After Marilla Burpo's death, her son Archie Harris assumed responsibility for making the mortgage payment and continued making said payments until SLS began refusing to accept the payments from him because he was not the named mortgagor on the account." (*Id.* ¶ 11). SLS also "stopped communicating with him and refused to give him any further information." (*Id.*). "Bank of America and SLS never applied some payments at all" even though Plaintiffs "sent in the payments, and they were deposited by Bank of America and SLS." (*Id.* ¶ 26). This refusal to apply payments to the account was despite Harris providing his mother's death certificate and the Estate paperwork (*id.* ¶ 11), as well as several written requests indicating Harris's belief that he might be a successor in interest to the loan. (*Id.* ¶ 14).

"Apparently, Bank of America and SLS have misplaced or are unable to account for the funds from payments made or sent by Harris and the Estate," and that "several other payments were misapplied or were not accounted for." (*Id.* ¶ 26). In September and October 2021 "unauthorized late fees, and other charges were improperly added to their account." (*Id.*). In July 2021 Plaintiffs complained about improper maintenance of their escrow account, including by asserting that there were demands of payment to the escrow account when payments were not due. (*Id.*). Between 2019 and 2022, Defendants "improperly held some of Harris and the Estate's

payments in a 'suspense account'" and charged late fees and interest "as if the payments had not been made even though they had received the payments." (*Id.*). Charges on the monthly mortgage statements included "property inspection fees" and "drive by inspection fees." (*Id.* ¶ 38). Defendants caused the late fees to be charged "by improperly raising the mortgage payment due to force placed insurance." (*Id.*). Had the Estate's and Harris's payments been applied to the loan underlying the mortgage, it would not have been in default. (*Id.* ¶¶ 34, 37).

"In December 2022, the Defendants began threatening foreclosure on the property due to an alleged default in the mortgage loan. The loan was accelerated, and the foreclosure proceedings were instituted against the Plaintiffs' property." (*Id.* ¶ 10). At the time of foreclosure, Freddie Mac owned the loan and SLS serviced it. (*Id.* ¶ 17). The Defendants were "notified regarding the illegality of a foreclosure sale" but the sale was not cancelled; rather, it was only postponed several times (including to August 9, 2023), "with the latest sale date purportedly set for January 24, 2024." (*Id.* ¶¶ 10, 32).

The mortgage agreement "provides that Lender shall give notice to the borrower prior to the acceleration following borrower's breach." (*Id.* ¶ 12). SLS "refused to engage in a legitimate and good faith mortgage foreclosure avoidance workout," or "accept the proper payments," and "inflated the amount due, and attempted to foreclose." (*Id.*). SLS "did not conduct all required pre-foreclosure counseling and loss mitigation efforts." (*Id.* ¶ 25). Specifically, Defendants failed to comply with Paragraph 22 of the Mortgage. (*Id.* ¶ 37).

"On March 25, 2022, the Attorney for the Estate wrote to SLS . . . asking for information regarding the mortgage debt and seeking reinstatement figures." (*Id.* ¶ 14). SLS did not respond. (*Id.*). In December 2022, SLS began foreclosure proceedings, publishing a foreclosure sale notice

in the Alabama Messenger in Jefferson County, Alabama in March, April, May, and June 2023. (*Id.* ¶ 21). This notice was also published on the internet. (*Id.*).

In March 2023, the law firm handling the attempted foreclosure sale sent a letter to the Estate announcing the sale via auction on May 31, 2023. (*Id.* ¶ 31). "[T]he letter stated that SLS was the owner of the loan, the creditor to who[m] the debt was owed, and the party who was conducting the foreclosure sale." (*Id.*). This information had also been published in a local newspaper. (*Id.*). "On May 23, 2023, Archie Harris and the Estate sent a 'Qualified Written Request' (QWR) to SLS and a copy to its foreclosure attorneys. In addition, Harris and the Estate sent SLS a 'Notice of Error' and a copy to its foreclosure attorneys." (*Id.* ¶ 18). Plaintiffs also sent a letter disputing the debt and foreclosure sale and asking that the sale be postponed or cancelled under the FDCPA. (*Id.*). On July 17, 2023, a notice of error letter was sent to SLS "regarding problems, issues, and error[s] related to The Estate and Harris's mortgage loan account." (*Id.* ¶ 38). "SLS never properly responded." (*Id.*). Plaintiffs "have suffered great mental anguish, damage to their reputation, economic and emotional damages." (*Id.* ¶¶ 26, 28, 39).

Plaintiffs' complaint asserts the following claims: Unjust enrichment of Freddie Mac and SLS (Counts One and Two); breach of contract by Freddie Mac, SLS, and Bank of America (Counts Three, Four, and Five); defamation, libel, and slander against Freddie Mac and SLS (Counts Six and Seven); violation of TILA by SLS (Count Eight); violation of RESPA by SLS (Count Nine); violation of the FDCPA by SLS (Count Ten); and a claim for declaratory relief against all Defendants (Count Eleven). (Doc. # 16 at 15-35).

Plaintiffs abandoned their defamation claims, so Counts Six and Seven are due to be dismissed. (*See* Docs. # 55 at 1 n.1; 56 at 1 n.1; 57 at 1). Because Plaintiffs previously dismissed Bank of America, N.A., Count Five is also due to be dismissed. After reviewing the briefing on

Defendants' Motions to Dismiss (Docs. # 50, 52), the court ordered Plaintiffs to show cause as to why the claims asserted by Harris should not be dismissed for lack of standing. (Doc. # 58). Plaintiffs filed a Response (Doc. # 62), and Defendants filed a Reply. (Doc. # 64).

## II.    Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not satisfy Rule 8, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires a plaintiff to allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). In addition, "a court should 1) eliminate any allegations in the complaint that are

merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (per curiam) (citations and internal quotation marks omitted). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the court determines that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the claims are due to be dismissed. *Id.* at 570.

## III.    Analysis

SLS moved to dismiss Harris as a Plaintiff because, it contends, Harris lacks standing (Doc. # 53 at 3-5) and in the consolidated Reply Freddie Mac also adopted this argument. (Doc. # 57 at 1-2). As to the Estate, SLS moved to dismiss only the unjust enrichment claim (Count Two) and the TILA claim (Count Eight). Freddie Mac moved to dismiss the unjust enrichment claim (Count One). (Doc. # 51 at 3). The court considers the arguments made in these papers below.

### A.    Harris's Standing

The court must first examine whether Harris has standing to bring his claims. This is because standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "[W]hen a question about standing is raised at the motion to dismiss stage, 'it may be sufficient to provide general factual allegations of injury resulting from the defendant's conduct.'" *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005) (quoting *Fla. Pub. Int. Rsch. Grp. v. EPA*, 386 F.3d 1070, 1083 (11th Cir. 2004)).

"To establish standing, as [the Supreme] Court has often stated, a plaintiff must demonstrate (i) that [he] has suffered or likely will suffer an injury in fact, (ii) that the injury likely

was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

To be sufficient to establish standing, an injury in fact must be particularized. *Lujan*, 504 U.S. at 560-61. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1). The Supreme Court has suggested that this requires an injury to be "personal," *id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) and *Allen v. Wright*, 468 U.S. 737, 751 (1984)), "distinct," *id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)) and "not 'undifferentiated,'" *id.* (quoting *United States v. Richardson*, 418 U.S. 166, 177 (1974)).

Harris has alleged that he is one of three heirs to Marilla Burpo, that Burpo died intestate, and that Burpo's estate has not yet been settled. (Doc. # 62 ¶ 4). Under Alabama law, which governs the intestate succession of property located in Alabama, when the owner of property dies intestate, the estate passes to her heirs, who then possess it as tenants in common. *Reese v. Harris*, 772 So. 2d 1193, 1195 (Ala. Civ. App. 2000) (citing *Ruffin v. Crowell*, 46 So. 2d 218 (1950)). "Alabama law provides that 'real estate vests immediately in the heirs at law subject only to recapture by the administrator or executor in the event that property is needed for the payment of debts of the decedent.'" *Id.* (quoting *McCollum v. Towns*, 435 So. 2d 17, 19 (Ala. 1983)). Because Burpo died intestate and has three heirs, Harris currently has an undivided one-third ownership interest in the property at issue in this case. *Russell v. Stylecraft, Inc.*, 244 So. 2d 579, 584 (Ala. 1971).

###### i.    Unjust Enrichment Claims (Counts One and Two)

Regarding his unjust enrichment claims, Harris alleges that he suffered from Freddie Mac and SLS "charging Plaintiff fees and expenses which were not permitted" or from being "forced to pay charges that were illegal, wrong in character, wrong in amount, unauthorized, or otherwise improper under the mortgage contract." (Doc. # 16 ¶¶ 40-41 (Freddie Mac), 43-44 (SLS)). Harris has not plausibly alleged that he is a party to the mortgage contract, although he does plausibly allege that is a part-owner of the mortgaged property as a tenant in common. The complaint also does not specify which "Plaintiff" it refers to when stating that the Defendants charged "Plaintiff fees and expenses which were not permitted." (*See* Doc. # 16 ¶¶ 40-41, 43-44). The question therefore is whether being a tenant in common would give Harris standing to challenge Defendants' alleged improper charges under the mortgage contract to that property. At the motion to dismiss stage, these allegations are sufficient to establish Harris's standing. He is living in the property and is a part-owner of it, so if Defendants are charging improper fees on the mortgage contract to the property, there is a particularized injury of improperly charging too much on mortgage payments, which financially harms Harris as a part-owner of the property. Additionally, charging too much could lead to an improper foreclosure, which would harm Harris as resident of the property.

The complaint also alleges that "[a]pparently, Bank of America and SLS have misplaced or are unable to account for the funds from payments made or sent by Harris and the Estate," and that "several other payments were misapplied or were not accounted for." (*Id.* ¶ 26). Because there is no plausibly alleged contract (mortgage or otherwise) between Harris and SLS, if SLS misplaced or was unable to account for Harris's payments, this could represent unjust enrichment, which

(based on the allegations in this case) is an injury particularized to Harris. Therefore, Harris has standing to pursue this theory of unjust enrichment as well.

### ii.    Breach of Contract Claims (Counts Three and Four)

As Plaintiffs' counsel acknowledged in a telephone conference on March 17, 2025, Harris has no injury related to his breach of contract claim because he has not asserted that he was a party to the mortgage contract or that he was a third-party beneficiary of that contract. The rule in Alabama regarding third-party beneficiaries is that "the complainant must show: 1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; 2) that the complainant was the intended beneficiary of the contract; and 3) that the contract was breached." *Iskra v. Bear Roofing, LLC*, 2024 WL 2984756, at *3 (Ala. 2024) (quoting *H.R.H. Metals, Inc. v. Miller*, 833 So. 2d 18, 24 (Ala. 2002) (cleaned up)). Harris has not pleaded facts to show that the parties to the mortgage intended at the time it was created to bestow a benefit on him, nor has he alleged that he was a party to the original mortgage contract. Therefore, Harris himself has no standing to assert a breach of contract claim.

### iii.    TILA Claim (Count Eight)

TILA declares that "[i]t is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the *consumer* will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the *consumer* against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a) (emphasis added). Harris has not plausibly pleaded any facts that show he was a consumer of credit related to the property at 1004 Parkwood Circle, Birmingham, Alabama 35215. This is because Harris merely pleaded that he was an heir and administrator of the Estate – not that he was a party to the mortgage contract or otherwise was someone who borrowed from Defendants himself.

Harris argues that Regulation Z under TILA establishes him as a "consumer" because he is a confirmed successor in interest. (*See* Doc. # 56 at 13-14) (citing 12 C.F.R. § 1026.2(a)(11)). That regulation, which includes the definitions and rules of construction in 12 C.F.R. § 1026.2(a)(27), defines "[s]uccessor in interest" as "a person to whom an ownership interest in a dwelling securing a closed-end consumer credit transaction is transferred from a consumer . . . ." *Id.* at (a)(27)(i). The regulation defines "[c]onfirmed successor in interest" as "a successor in interest once a servicer has confirmed the successor in interest's identity and ownership interest in the dwelling." *Id.* at (a)(27)(ii).

Harris has alleged that he is one of three co-heirs to the estate and that he is currently residing in the property. (Docs. # 16 ¶¶ 1, 8; 62 ¶ 4). Harris has therefore plausibly pleaded facts that if true would establish he would be eligible to be a successor in interest because he currently has an ownership interest in the property. He has not, however, pleaded that Defendants ever confirmed him as a successor in interest. Instead, Harris argues that he has standing because Defendants violated Consumer Financial Protection Bureau ("CFPB") rules that require servicers to "promptly" communicate with anyone who may be a successor in interest, and only request documents "reasonably" required to confirm whether that person is in fact a successor in interest. (Doc. # 62 ¶¶ 9-11 (citing 12 C.F.R. §§ 1024.38, 1024.36(i)(1)).

The problem with asserting standing under Regulation Z is that Plaintiffs have not identified any cause of action that allows Harris to recover against Defendants for their alleged lapses in complying with these regulations. Indeed, as the CFPB has explained, it intentionally excluded such a cause of action. The summary of 2016 Amendments to Regulation X and Regulation Z states: "the final rule does not provide potential successors in interest a private right of action or a notice of error procedure for claims that a servicer . . . failed to comply with §

1024.36(i) or § 1024.38(b)(1)(vi)." 81 F.R. 72160-01, at *72175. Therefore, as currently pleaded, Harris does not have standing to pursue a TILA claim. Harris acknowledges this legal reality.

### iv.    RESPA Claim (Count Nine)

Harris also argues that Regulation X under RESPA establishes him as a "borrower" because he is a confirmed successor in interest. (*See* Doc. # 56 at 12-14). That regulation includes the definitions and rules of construction found in 12 C.F.R. § 1024.31, which defines a successor-in-interest as "a person to whom an ownership interest in a property securing a mortgage loan subject to this subpart is transferred from a borrower, provided that the transfer is . . . by devise, descent, or operation of law on the death of a joint tenant or tenant by the entirety." *Id.* For the same reason stated above in the discussion of the TILA claim, Harris is not a confirmed successor in interest under RESPA's Regulation X and has no cause of action to challenge any failure of a servicer to confirm him as a successor in interest. Therefore, Harris has no standing to pursue a RESPA claim.

### v.    FDCPA Claim (Count Ten)

Plaintiffs assert the following violations of the FDCPA: 15 U.S.C. §§ 1692e(2), 1692e(5), 1692e(8), 1692f, 1692f(6), 1692g(a)(1), and 1692g(b).

Although several of these provisions allow a non-consumer to bring a challenge under the FDCPA, Harris must still show that, for each claim, he suffered a particularized injury that was caused by SLS. Section 1692e, in general, prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The complaint alleges that SLS violated this provision because, in multiple ways, it conveyed incorrect information about "Plaintiff's debt." (Doc. # 16 ¶¶ 109-10, 118). Although Harris has not plausibly alleged that *he* has any debt owned or serviced by SLS, he could

12

be injured as a part-owner and resident of the property if he was attempting to pay the mortgage and received incorrect information about it. Therefore, Harris has sufficiently pleaded facts to establish his standing to sue under § 1692e.

Section 1692f, in general, prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The complaint alleges that SLS violated this provision by unfairly collecting interest and other fees not authorized by the mortgage agreement. (Doc. # 16 ¶¶ 109, 118). For similar reasons as discussed regarding his standing to bring an unjust enrichment claim, Harris has plausibly alleged that he was injured by the charging of improper fees and interest. So, he has sufficiently pleaded facts to establish standing to sue under § 1692f.

Section 1692g applies to consumers. *See* 15 U.S.C. § 1692g(a)-(e). The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Because Harris has not plausibly alleged that he is a party to the mortgage agreement, he also has not plausibly alleged that he is obligated to pay the note on the mortgage. Therefore, Harris has not sufficiently pleaded facts to establish standing to sue under § 1692g.

Harris therefore has sufficiently pleaded facts to plausibly establish standing to pursue his FDCPA claims under sections 1692e and 1692f.

###    B.    Unjust Enrichment Claim (Counts One and Two)

Defendants argue that the express language of the mortgage agreement precludes an unjust enrichment claim. (Docs. # 53 at 5-6; 51 at 3-4). Defendants also argue that, in any event, this claim fails because there is an adequate remedy at law in the form of a breach of contract claim, and that Plaintiffs have not plausibly alleged a claim of unjust enrichment. (Docs. # 53 at 7-8; 51 at 4-5).

Although "the existence of an express contract extinguishes an unjust enrichment claim," *Univalor Trust, SA v. Columbia Petroleum, LLC*, 315 F.R.D. 374, 382 (S.D. Ala. 2016) (citing *Mantiply v. Mantiply*, 951 So. 2d 638, 654 (Ala. 2006)), Federal Rule of Civil Procedure 8(d) allows a party to plead alternative and inconsistent claims. *See United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1273 (11th Cir. 2009). At this stage, where the court is ruling on a motion to dismiss, these alternative and inconsistent claims satisfy the federal pleadings standards and are not yet due to be dismissed.

### C.    TILA Claim (Count Eight)

SLS argues that Plaintiffs' TILA claim is barred by the statute's one-year statute of limitations because that statute commenced when the borrower entered the loan transaction, which was in 2009. (*See* Doc. # 53 at 10). Further, because there is no "continuing violation" under TILA that extends the statute of limitations (*id.* (citing *Rice v. Seterus, Inc.*, 2018 WL 513345, at *10 (N.D. Ala. Jan. 23, 2018))), Plaintiffs' requests for information that allegedly formed the basis for TILA complaints would not toll or restart the one-year period. The court agrees.

Relevant to a cause of action under TILA, "'[n]ondisclosure is not a continuing violation for purposes of the statute of limitations.'" *Cooper v. Countrywide home Loans*, 724 F. App'x 741, 743 (11th Cir. 2018) (per curiam) (quoting *In re Smith*, 737 F.2d 1549, 1552 (11th Cir. 1984)). Plaintiffs' arguments otherwise are unpersuasive. (*See* Doc. # 56 at 11 (citing *Lamirand v. Fay Servicing, LLC*, 38 F.4th 976, 980 (11th Cir. 2022) (not discussing statutes of limitations at all))). The law on the TILA statute of limitations is well settled that the one-year clock begins ticking "'when the transaction is consummated.'" *Cooper*, 724 F. App'x at 743 (quoting *In re Smith*, 737 F.2d at 1552). Therefore, Plaintiffs' TILA claims must have been brought on or before August 26,

2010, because the transaction (loan and mortgage) was consummated on August 26, 2009. (*See* Doc. # 16 ¶ 7). Because they were not, they are due to be dismissed.

## IV.    Conclusion

For the above reasons, Defendant Federal Home Loan Mortgage Corporation's Motion to Dismiss (Doc. # 50) and Defendant Specialized Loan Servicing, LLC's Motion to Dismiss (Doc. # 52) are due to be granted in part and denied in part. An order consistent with this memorandum opinion will be entered contemporaneously.

**DONE** and **ORDERED** this March 28, 2025.

R. DAVID PROCTOR
CHIEF U.S. DISTRICT JUDGE